UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LILLIAN BORICH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 2367 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| | ) | |
| BP PRODUCTS | ) | |
| NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After plaintiff Lillian Borich's ("Borich") employment was terminated, she filed in the Circuit Court of Cook County a five-count complaint against BP, p.l.c.; BP Exploration & Production, Inc.; BP Products North America, Inc.; BP America, Inc. and Robert Dudley. Defendants removed the case to this court and moved to dismiss. The Court dismissed (for failure to state a claim) plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, the claim that gives this Court its jurisdiction.

Plaintiff is now on her third attempt to state a RICO claim. After the Court dismissed her original complaint, plaintiff filed an amended complaint, which defendants moved to dismiss. In response, plaintiff sought leave to file a second-amended complaint. The Court allowed plaintiff to file her second-amended complaint, in which she asserts claims against a single defendant, BP Products North America, Inc. ("BP"). Plaintiff asserts three claims: Count I under RICO, Count II for breach of contract and Count III for fraudulent misrepresentation.

Defendant has filed a motion to dismiss plaintiff's second-amended complaint for failure to state a claim. For the reasons set forth below, the Court grants in part and denies in part defendant's motion to dismiss.

I. **Background**

The Court takes as true the facts alleged in plaintiff's second-amended complaint ("SA Complt.").

In her second-amended complaint, Borich seeks to "recover wages [she] would have earned during her employment with BP had BP not fraudulently induced her" to accept a position from which it ultimately discharged her. (SA Complt. at ¶ 1).

In or about early 2007, after having worked for BP for about three years, Borich applied for the position of Business-to-Business Marketing Manager at TNK-BP (a joint venture owned by BP, p.l.c. and a Russian oil company) in Ukraine. The business-to-business marketing position was new. Previously, TNK-BP had made its sales through wholesalers, and the sales made through wholesalers sometimes involved the use of bribes.

BP employee Mark Goodwin, who was assigned to TNK-BP, interviewed Borich for the position, which she ultimately accepted. They communicated about the position a number of times. For example, Goodwin spoke to Borich on the phone and sent her emails (via interstate or foreign wires) on December 9, 2006 and February 24, 2007. In these communications, Goodwin "indicated to Borich that BP was sincere in its desire to operate its Eastern European sales on a Business-to-Business model."[1] (SA Complt. ¶ 12). "BP and Goodwin knew at the time that it

---

[1] These quotations are from Borich's second-amended complaint, not from the emails themselves, which Borich has not attached to her second-amended complaint.

was *merely attempting* to change BP's business model from the use of wholesalers executing sales through bribes to the Business-to-Business model. BP knew that such a shift would be opposed by TNK, BP's Russian partner in TNK-BP. Thus, it knew the success of the Business-to-Business group Borich was being hired to head was predicated upon a very uncertain change in the TNK-BP culture and way of conducting business . . ." (SA Complt. ¶ 13) (emphasis added).

Goodwin and Borich continued to correspond about the position via email. On March 17, 2007, Goodwin emailed Borich to inform her that the position would last three years and to explain the housing reimbursement policy. On March 15, 2007, Borich accepted the position and terms by email. On March 30, 2007, BP (in Texas) emailed Borich (in Illinois) an assignment agreement, which Borich signed and sent back to Texas by facsimile. In April 2007, Goodwin "gave [Borich] materials prepared by the Boston Consulting Group for BP" that "detailed the Business-to-Business model of selling oil" and "made it clear that he wanted her to pursue this business model in her position." (SA Complt. ¶ 20).

Borich moved to Ukraine to begin her position. She attempted to complete oil sales directly to companies and was successful in completing some sales. Borich alleges that BP refused to complete some of her sales, but she does not say why.

By December 2007, BP either gave up on the business-to-business model or gave up on having Borich sell business-to-business. At that time, Borich learned that BP was transferring her to the commercial sales department, where sales were made through middlemen. Borich believed such work was dangerous. At some point, Borich took a medical leave, and by March 2008, BP terminated her employment contract (though it paid her through June).

Borich alleges that during the time she worked at TNK-BP, BP (via Goodwin) violated the Foreign Corrupt Practices Act. She alleges that "the company was deeply engaged in a bribery-based business model." (SA Complt. ¶ 30). Borich alleges "BP bribes were regularly approved and paid by Goodwin from a special BP account." (SA Complt. ¶ 30). The bribes were paid to "local government officials and Donetsk JV, a business." (SA Complt. ¶ 30). Borich states in her second-amended complaint that these Foreign Corrupt Practices Act "crimes are pleaded in order to establish a pattern of racketeering activity, not to establish that Borich was damaged by them." (SA Complt. ¶ 31). The bribes were effectuated via email.

Borich also alleges that BP breached its contract with her by not completing sales she arranged to businesses. Finally, Borich asserts that she was fraudulently induced to take the position in Ukraine.

Defendant moves to dismiss.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause

of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

Certain allegations must be stated with particularity. For example, Federal Rule of Civil Procedure 9(b) mandates that all averments of fraud must be "state[d] with particularity." Fed.R.Civ.P. 9(b).

### III. Discussion

#### A. Plaintiff's RICO claim

Defendant moves to dismiss plaintiff's RICO count for failure to state a claim.

Congress passed RICO to "eradicate organized, long-term criminal activity." *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). The statute provides a civil cause of action for violations of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . "). Despite "widespread abuse" of civil RICO, RICO "has not federalized every state common-law cause of

action available to remedy business deals gone sour." *Midwest Grinding*, 976 F.2d at 1025. "Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006).

In Count I, Borich asserts a civil claim under RICO § 1962(c). That section provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Thus, in order to state a claim under § 1962(c), Borich must allege that the defendants (1) conducted or participated in the conduct of (2) an enterprise (3) through a pattern of (4) racketeering activity. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). A "pattern of racketeering activity" is "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(f). Racketeering activity, in turn, includes a number of indictable offenses, including mail and wire fraud. 18 U.S.C. § 1961(a). To establish a pattern under RICO, "it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). RICO, though, does not apply extraterritorially. *Norex v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010). This Court previously concluded (in its last opinion in this case) that the proper focus, in determining whether a plaintiff seeks extraterritorial application of RICO, is the predicate acts and their consequences. *Borich v. BP, P.L.C.*, __ F. Supp. 2d __, __, 2012 WL 526925 (N.D. Ill. Oct. 23, 2012).

As defendant points out, plaintiff's RICO claim has a number of flaws, all of which are fatal. In a nutshell, Borich has failed to allege a domestic pattern of racketeering activity from which she was injured.

Borich alleges that BP used email and fax communications to induce her fraudulently into accepting the Business-to-Business Marketing Manager position. Because these communications occurred by telephone and email, Borich's theory is that these communications constituted wire fraud, a predicate act under RICO. Because Borich alleges multiple communications, she believes she has alleged a pattern of racketeering activity. Defendant objects that these communications are not alleged with sufficient particularly, and, in several instances (such as the March 17, 2007 and March 30, 2007 emails), that is true.

The bigger problem with Borich's wire fraud theory, though, is the absence of fraud. *See Perlman v. Zell*, 185 F.3d 850, 854 (7th Cir. 1999) ("The word 'fraud' in the mail-fraud statute means deliberate, material misrepresentations. No fraud, no mail fraud.") (internal citations omitted). Borich alleges that Goodwin told her (in at least two wire-based communications) that "BP was sincere in its desire to operate its Eastern European sales on a Business-to-Business model." Borich also alleges that "BP and Goodwin knew that it was *merely attempting* to change BP's business model from the use of wholesalers executing sales through bribes to the Business-to-Business model." (Emphasis added). Although Borich tries to paint this as fraud, the two positions are not inconsistent and, therefore, do not suggest that Goodwin's statements to Borich were misrepresentations. Knowing one is "merely attempting" to change a business practice is consistent with being "sincere" in one's desire to change it. That BP did not succeed (according to plaintiff's allegations) in changing to a business-to-business model does not

suggest fraud. It merely suggests failure. *Cf. United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("failures to satisfy the customer *ex post* are not fraud, for as Judge Friendly remarked there is no 'fraud by hindsight.'"). Predictions that turn out to be wrong are not fraud. *See Lillien v. Peak Investments, L.P.*, 417 F.3d 667, 671 (7th Cir. 2005) (plaintiff had no claim for fraud where employer allegedly misrepresented the likelihood of an initial public offering in order to induce the plaintiff to accept employment, because a "prediction about a future event" is not actionable as fraud ). Plaintiff has alleged no domestic predicate acts and, thus, has not alleged a domestic pattern of racketeering.

Nonetheless, Borich asserts that BP "was deeply engaged in a bribery-based business model" in Ukraine. She alleges that bribes were paid to "local government officials and Donetsk JV, a business." A huge problem with these allegations is that the alleged bribes all occurred in Ukraine, but RICO does not have an extraterritorial reach. In any case, Borich was not injured by the bribes, as she essentially admits in her second-amended complaint. (SA Complt. ¶ 31) ("These [bribery] crimes are pleaded in order to establish a pattern of racketeering activity, not to establish that Borich was damaged by them.")

That brings us to the biggest problem with Borich's RICO claim: she has no standing, because a predicate act was not the proximate cause of her injury. *Anza v. Ideal Supply Corp.*, 547 U.S. 451, 453 (2006) ("a plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury") (citing *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). As the Court explained in its last opinion, plaintiff's injuries–lost wages and travel expenses–were proximately caused by BP's termination of her employment. The termination of her employment was not a predicate act under RICO and could

not be (as the Court explained in its last opinion) unless plaintiff had alleged retaliation under the Sarbanes-Oxley Act, 18 U.S.C. § 1513(e). *DeGuelle v. Camilli*, 664 F.3d 192, 200-01 (7th Cir. 2011). Borich has not, in three tries, even attempted to do so.

These are not the only problems with plaintiff's RICO claim, but they are enough to convince the Court that they cannot be cured with a fourth pleading. Count I is dismissed with prejudice.

### B. Borich's state-law claims

In her second-amended complaint, Borich also asserts two state-law claims, and defendant moves to dismiss those. The Court denies this portion of defendants' motion, though not on the merits.

A district court may "decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court's decision to relinquish supplemental jurisdiction is "the norm, not the exception." *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (quoting *Fisher v. Information Resources, Inc.*, 873 F.2d 136, 140 (7th Cir. 1989)). Accordingly, the Court will remand Borich's remaining claims.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendant's motion to dismiss. The Court dismisses Count I with prejudice. The Court will remand this case to the Circuit Court of Cook County.

ENTER:

George M. Marovich
United States District Judge

DATED: May 28, 2012